Kendall *v.* Kendall.

NANCY KENDALL et al., executors,

*v.*

JOSHUA KENDALL et al.

1. A gift of personal property for life, with power to the legatee to use it as she may deem proper, or to sell it, or any part of it, for her benefit, as she may deem needful or best—*Held,* to be an absolute gift.

2. A devise of a residue for the benefit of the testator's children, and in case

of the death of them and their children without leaving any child or children them surviving, the residue to go, after the death of the testator's widow, to his "heirs bearing the Kendall name"—*Held*, a gift for life to the children (there being evidence that the testator intended to give only a life-estate to his children), with remainder in fee to the grandchildren with limitation over to the testator's heirs "bearing the Kendall name," in case of the death of the children, and their children, without leaving lawful issue surviving, in the lifetime of the widow.

Bill for relief. On final hearing on bill and proofs.

*Mr. C. T. Glen* and *Mr. J. R. English,* for complainants, *ex parte.*

THE CHANCELLOR.

John M. Kendall, deceased, late of the county of Union in this state, died on or about the 31st of July, 1879, leaving a last will and testament, dated January 10th, 1876, which has been duly admitted to probate and letters testamentary thereon granted to the executors, the complainants, who are his widow and one of his sons. By it, after providing for the payment of his debts and funeral expenses out of his personal estate, he devised and bequeathed as follows :

"*Second.* I give, devise and bequeath to my beloved wife, Nancy Kendall, the use and improvements of the homestead of thirty acres, with its buildings and appurtenances, situated in the township of New Providence, Union county and state of New Jersey, together with a tract of woodland consisting of five acres, situated in the Great Swamp, said tract being the same that I received from her father, Joseph Ludlow, to have and to hold the same to her for and during the term of her natural life; also all the household furniture and goods in my house where I now live, together with all my horses, harness, carriages, cows, hogs and live stock of every kind to me belonging, I do hereby give and bequeath to her, to have and to hold during her natural life and to use as she may deem proper, or to sell it, or any part of it, for her benefit, as she may deem needful or best. This gift, devise or bequest in this second article of my will to my beloved wife, Nancy, is intended to be in lieu of and full satisfaction and recompense for her dower and thirds, which she can in any wise claim of my estate.

"*Third.* I give, devise and bequeath to my son, Joshua Kendall, and his wife, Sarah Ann, the dwelling-house in which they now live and one-quarter of an

acre of land immediately adjoining the same, to occupy, use and enjoy as a home for themselves and their family during the natural life of Joshua or of his wife. On the decease of both Joshua and his wife, the property which in this article I have given to them to use and enjoy during the period of their natural lives, shall revert to my estate, to be disposed of as hereinafter directed.

" *Fourth.* I give, devise and bequeath to my brother, William Kendall, and to my sisters, Margaret Kendall, Eliza Kendall, Maria Kendall, and Mrs. Ann Wooden (widow of Ezra Wooden, deceased), the house and lot containing about one acre where my brother William now lives, and also the undivided sixth part of a lot of land containing about twenty acres now cultivated and used by my brother William and his family, and which lies adjoining lands of Amos Potter and Daniel Pike, to have, hold and use to their benefit, free of rents or any charges as from my estate, during their natural lives. At the decease of my brother William and of my sisters named in this fourth article of my will, this property, which I have thus given to their use and benefit during their natural lives, shall revert to my estate and be disposed of as hereinafter described.

" *Fifth.* To my son, John Ludlow Kendall, I give, devise and bequeath the homestead where I now live, comprising—first, the tract of land on which my dwelling-house stands, said to contain ten acres, more or less, the same running back to the Passaic river ; and second, the tract lying on the southeast side of the road leading to New Providence, described in two deeds, one given by John Crane to John M. Kendall, and one by Levi Clark and wife to John M. Kendall, said tract lying adjoining land owned by Daniel Pike, in the township of New Providence, Union county and state of New Jersey, together with all the hereditaments thereunto belonging and which may remain at the decease of my beloved wife, Nancy, to him, his heirs, executors, administrators and assigns, to have and to hold forever, the same to take effect after the decease of my wife.

" *Sixth.* I give and devise all the remainder of my estate, personal and real, of which I may die seized or possessed, of whatever name and wherever found, to the following persons, viz.: My beloved wife, Nancy Kendall, and my son, John Ludlow Kendall, as trustees, to have and to hold the same to themselves, their heirs and assigns forever, upon the trusts following, viz.: I hereby instruct my said trustees, upon my decease, to sell any or all of the said remainder of my real estate at private or public sale, and invest the proceeds upon bond and mortgage, or to lease the same, as they may deem best for the interest of my estate ; the said remainder of real estate is the following, viz.: A tract on Stony Hill, known as the Stiles lot ; a tract joining the lands of Daniel Pike and William Johnson, known as the Clark lot ; a tract situated in the Great Swamp, and known as the Elmer lot, of five acres ; also the Potter lot of seven and a half acres, and the Stiles lot of seven or eight acres, the last three of which lie adjoining each other, and in which my brother, William Kendall, has a half claim. I also hereby authorize and instruct the aforesaid trustees to pay from the proceeds of the property entrusted to their care and control, to my son, Joshua Kendall, and my daughters, Hannah E.

Kendall *v.* Kendall.

Benbrook and Sarah C. McBirney, such sums, from time to time, as in the judgment of the said trustees shall minister to the wants, necessities and comforts of them severally; and in the case of the death of my said son, Joshua Kendall, and of my said daughters, Hannah E. Benbrook and Sarah C. McBirney, and their children, without leaving any child or children them surviving, then I give, devise and bequeath all said residue or remainder of my estate, real and personal, after the death of my wife, to my heirs-at-law bearing the Kendall name; also I hereby authorize and instruct the aforesaid trustees to aid my son, Joshua Kendall, to keep in force his life insurance policy obtained of the Northwestern Mutual Life Insurance Company, No. 416 Main street, Milwaukee, in the state of Wisconsin, for five thousand dollars, believing this to be one of the ways in which from the property entrusted to them they may best aid him and his children. They shall furnish such sums, from time to time, for his aid and benefit, as they, the trustees, may deem wise and prudent."

The executors have paid all the debts and demands against the estate except a claim of $3,000 and interest, made by the testator's son Joshua, upon an account stated, as the bill alleges, by and between him and the testator, and on which he has brought suit against the executors, which is now pending. On or about April 1st, 1872, the testator's son-in-law, David Mc-Birney, being indebted to him to the amount of $2,300, conveyed to him certain real estate, described as being on Bell's Corner, and took from him an instrument of writing, under their hands and seals, by which it was agreed that McBirney was to pay the testator every year so much of the debt as he could, together with all taxes and interest on so much of the money as from time to time should remain unpaid; and the testator agreed that on compliance by McBirney with the terms of the agreement on his part, and repayment of the $2,300, with interest, he would reconvey the property to him. The agreement also provided that McBirney should not have the right to sell the property, except at a price sufficient to repay the testator all that should be due him for principal and interest, and for taxes and insurance premiums paid by him. McBirney demands a reconveyance of the property to him by the executors, on his paying them the amount which will remain due to the estate from him on account of that transaction, after allowing him a demand of his own against the estate and another of

Kendall *v.* Kendall.

his wife's. The testator, in 1869, advanced to his daughter, Hannah E. Benbrook (who died four months before him, leaving a husband and two children, all of whom are still living) $1,600, expecting to receive from her and her husband a mortgage to secure the repayment thereof, but the husband refused to execute the mortgage, and the testator never received any security or evidence of debt for the money.

The bill states that after the testator's death some of the persons interested under the will were very much dissatisfied with its provisions, and, to remove the dissatisfaction, an arrangement was made by the executors with them, by which it was agreed that Mrs. Benbrook's children should be charged with the money advanced (in the bill said to be $2,000, but by the proof it appears to be $1,600) to their mother, and interest thereon; that Joshua Kendall's claim against the estate should be compromised and settled, by conveying to him in fee the land given to him and his wife, for their joint lives, by the third section of the will, and paying him $1,500 in cash; and that David McBirney should have a conveyance to him in fee of the land on Bell's Corner, on his receipting for the claims of himself and wife against the estate, and paying $500. The parties were advised by counsel that owing to the fact that the Benbrook children are minors, that arrangement could not be carried out without a decree of this court authorizing it.

The executors ask direction as to whether they shall convey the Bell's Corner property to McBirney, on receiving the $500 and a discharge of the claims of him and his wife, and whether they shall make the proposed compromise with Joshua.

Under the will, the following questions have been raised: *First.* Whether the widow's title to the personal property given to her is absolute or only a life-interest. *Second.* Whether the residuary clause is valid, and if so, to whom the property therein mentioned is to go. *Third.* If the clause is valid, whether the income or proceeds of that property are to be disposed of among the beneficiaries entirely at the discretion of the executors, or if not, how they are to be disposed of. *Fourth.* Whether so much of the testator's real property as is not particularly devised and

not mentioned in the residuary clause, passes thereunder. *Fifth.* Whether the court will sanction and direct the executors to carry out the family arrangement before mentioned.

To dispose of these questions: The gift of personal property to the widow made by the second section of the will, is clearly absolute. Though, by the terms of the bequest, the property (which is consumable) is given to her for her natural life, there is also granted to her power to sell it, or any part of it, for her own benefit, if she shall see fit to do so. There is no gift over. The authority to sell is evidence of the extent of the interest intended to be given, and is not a mere power. She takes an absolute interest in the property, and not merely a life interest, with power of disposition, during her life. *Dutch Church* v. *Smock, Sax. 148 ; Bradley* v. *Westcott, 13 Ves. 445 ; Maxwell's Will, 24 Beav. 246 ; Pennock* v. *Pennock, L. R. (13 Eq.) 144 ; Diehl's Appeal, 36 Pa. St. 120.*

The gift of the residue is, in terms, in trust for the benefit of three of the testator's children, his son Joshua, and his daughters, Hannah E. Benbrook and Sarah C. McBirney (Mrs. Benbrook died in his lifetime, as before stated), with a limitation over, after the death of his wife, to his heirs-at-law " bearing the Kendall name," in case of the death of those three children and their children without leaving any child or children them surviving. It is urged that this residuary devise is void because of that limitation ; that it contemplates an indefinite failure of issue, and therefore ties up the estate for more than a life or lives in being and twenty-one years afterwards, and creates a perpetuity. But that is not the true construction of the clause under consideration. The limitation over is in case of the death of the three children and their children, in the lifetime of the widow, leaving no child or children them surviving. In such an event, the residue is to go, after the death of the widow, to the testator's heirs-at-law of the Kendall name. If, then, the children and all their children shall not, at the widow's death, have died without leaving issue them surviving, the condition on which the limitation over rests will not exist, and that limitation will be at an end. Although the testator does not, in

terms, give the fee in the residue to the children of his three children named in that clause, yet he does so by implication. He evidently did not intend that the property, after the death of his children, should go to his heirs generally bearing the name of Kendall, unless neither his children's children nor any children of the latter should be living to take the property. But he unquestionably intended that at his children's death, their children should take the fee in their parents' shares, and if his grandchildren should not be alive, his great-grandchildren should take. A fee will pass by will by implication of law. The following authorities and cases support this construction : *4 Kent's Comm. 541; 2 Powell on Dev. 212 ; Ex parte Rogers, 2 Madd. 449 ; Dowling* v. *Dowling, L. R. (1 Eq.) 442 ; Holton* ads. *White, 3 Zab. 330, 425.*

The legal title to the residue is in the trustees, in trust to convert the residue into cash and invest the proceeds, or to lease it, and pay from the proceeds, whether derived from the investment or lease, to the testator's three children named in the clause, such sums, from time to time, as shall in the judgment of the trustees minister to the wants, necessities and comfort of the children severally, and the testator gives special direction as to certain aid to be given to the son. By implication the gift is for the benefit of those three children of the testator for their respective lives, and in equal shares, and after their death the property will go to their respective children *per stirpes.* But if, at the death of the widow, the three children and their children be all dead, without having left any child surviving them, the property will go to the testator's heirs-at-law of the Kendall name.

The design of the testator was to secure the proceeds or income of the residue to his three children named in the clause for their respective lives ; they were all to participate in those proceeds, but as to the payments to be made to each out of his or her share thereof, that was to be left wholly to the discretion of the trustees, except as he gave directions touching Joshua's share. That he meant to give to those three children only the income, is evidenced by the fact that in a certain contingency (that which has already been considered) he gives all the residue

over. As each of the three children was to participate in the proceeds, and the testator does not say what the shares are to be, equity declares that the shares shall be equal. Therefore, the trustees are to hold the residue, and dividing the income into three equal shares, pay one of them to Joshua and another to Sarah McBirney, for their respective lives, in such sums and at such times as they shall judge proper according to the directions of the will, observing the testator's special instructions as to Joshua's share. The other share is to be accumulated, and if at the death of the widow either Joshua or Sarah, or any of their children or children's children, or the Benbrook children, or their issue, shall be alive, the share, with its accumulations, is to go to the Benbrook children or their children, if the former shall then be dead, for their title to the share will then be absolute and no longer defeasible. The other two shares will be held for Joshua and Sarah respectively for life, with remainder to their children, the remainder subject to being defeated by the condition on which the limitation over is to take effect.

The testator, in his statement in the residuary clause, of the property which constituted the residue, did not include certain properties which he had previously devised for life, with directions as to all of which but one piece, that after the termination of the life-estate or estates, they shall revert to his estate, to be disposed of as thereinafter directed. It is quite clear that he intended that the remainder in those properties should constitute part of the residue, and the reason why he did not mention them in the residuary clause was probably that he supposed that it was unnecessary. Under the circumstances the general language of the clause will control. The testator clearly did not intend to die intestate as to any interest in those properties, and there is no subsequent direction in regard to them in the will, except the residuary clause. Where a testator, by general words in the residuary clause, covers all his property not previously specifically disposed of by the will, and then proceeds to state what the residue consists of, any omission of property in the particular statement will be regarded as accidental or unintentional, if nothing to lead to a contrary conclusion appears.

The right of McBirney to redeem the Bell's Corner property is clear. The testator's widow testifies that the testator agreed to allow, and credit on account of the money he was to receive for redemption, the amount which was due to Mrs. McBirney for her services rendered to him before her marriage; but it does not appear satisfactorily what she is entitled to receive, if anything, from the estate for those services. They were rendered to her father in his household after she became of age. She says there was no special arrangement between her and the testator as to compensation for them, but that it was understood that she was to have a good outfit when she was married, which she never received. She claims $780 for her compensation. The facts proved do not warrant the allowance. *Gardner's Adm.* v. *Schooley, 10 C. E. Gr. 150.* The amount to be allowed to McBirney on his own account is proved. The proposed compromise with Joshua would be sanctioned if the facts were established as alleged, but they are not. The advancement to Mrs. Benbrook is not chargeable against her children, and they cannot be made answerable for it. Their mother received nothing under the will, because she predeceased the testator. There is nothing whatever in the will to show that the testator intended the advancement to be an offset against or a charge on the interest in the estate which by the will he gave her; and the children take not by reason of intestacy but by devise. As a debt it is, so far as appears, barred by the statute of limitations. An advancement cannot, in the absence of evidence that the testator intended that it should be charged against the legatee, be set off against the legacy. In the case in hand it is to be observed that the will was made long after the advancement. An advancement, when it is allowed, does not bear interest.

The family arrangement which the court is asked to confirm and establish, is in derogation of the rights of infants who have interests under the will, with no corresponding advantage to them. It appears by the bill that some of the parties interested in the estate being dissatisfied with the provisions of the will, a family arrangement was made which was satisfactory to all the adult persons now interested under the will. Such persons, of

course, may make agreements for themselves, and do not need the aid of the court in the premises; but to bind those who are infants, it becomes necessary to ask the aid of the court to sanction the arrangement. It cannot be granted; for not only is the arrangement not advantageous to the infants, but it would be wholly prejudicial to their interests, except as it may prove that it would be judicious to settle Joshua's claim by conveying to him therefor the fee of the property specifically devised to him and his wife for their joint lives.